[Civ. No. 21673. Second Dist., Div. One. Apr. 23, 1956.]

INTERNATIONAL SOUND TECHNICIANS OF THE MOTION PICTURE BROADCAST AND AMUSEMENT INDUSTRIES LOCAL 695 OF THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JAMES FULLERTON, Real Party in Interest.

Algerdas N. Cheleden for Petitioner.

Charles P. Scully as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

John R. Inderrieden for Real Party in Interest.

NOURSE (Paul), J. pro tem.*—Petitioner seeks a writ of prohibition to prevent the respondent court from proceeding in an action brought against it and others by one Fullerton.

---

*Assigned by Chairman of Judicial Council.

The first amended complaint in the action brought by Fullerton contains six counts. By the first count Fullerton seeks (1) a mandatory injunction requiring petitioner to admit him to membership in petitioner Union; (2) to enjoin petitioner and the other defendants, who are employers of labor and with whom petitioner has a collective bargaining agreement as the bargaining agent for the employees of said employer-defendants, from requiring Fullerton to be a member of the Union as a condition to being employed by said employer-defendants so long as petitioner denies him membership in the Union.

By each of the remaining five causes of action the plaintiff seeks damages against the Union, and one or more of the other defendants named, because of his having been discharged by the employing defendant named, at the demand of the Union, and thus deprived of his means of livelihood.

The facts as alleged in the complaint in the action brought by Fullerton and shown by the petition filed here are:

The plaintiff is and for many years last past has been a sound technician, commonly known as a mixer;

The Union is a corporation organized under the laws of the state of California for the purpose of representing as a collective bargaining agent persons engaged as sound technicians in the motion picture and amusement industry with respect to the working conditions in their employment by persons, firms and corporations engaged in the production of motion and television pictures;

That the defendants named in the complaint as being engaged in the production of motion pictures and television pictures distribute and exhibit those pictures in interstate commerce, and in producing such pictures employ sound technicians, commonly known as mixers;

That an agreement has been entered into between petitioner (hereinafter called the Union) as the bargaining agent of sound technicians, including mixers, and the producers of motion pictures and television pictures, including the defendants named as producers and employers, fixing the terms and the conditions of employment of said sound technicians; and that by the terms of said agreement every employee hired by such employers is required to be and remain a member in good standing in the Union on and after the 30th day following the beginning of his employment in the motion picture industry;

That petitioner has on numerous dates commencing in February, 1952, and ending on August 19, 1955, applied to the Union for membership and offered to pay to the Union all application and initiation fees and dues required by it as a condition to membership in the Union, and has offered to meet and comply with all rules and regulations of the constitution and by-laws of the Union;

That the Union has refused to admit plaintiff as a member of the Union and has returned to him his application and his tendered fees and dues;

That by reason of the failure and refusal of the Union to accept Fullerton as a member, the employers named as defendants, and all employers who are parties to the collective bargaining agreement with the Union, have denied him employment as a mixer and he has thus been deprived of his right to work.

The facts just stated are the substance of those alleged in the first cause of action. In each of the remaining causes of action Fullerton alleges that on or about a certain date he accepted employment as a mixer with a named employer and sought but was refused membership in the Union, and that the Union, acting through its agents and officers, caused that employer to discharge him under threat that if it failed so to do the Union would refuse to allow its members to work on the same job as Fullerton; that as a result of said action on the part of the Union he was discharged and damaged in the amount of $250 to $400 per week for each week that he was so deprived of his right to work.

From the petition filed here it further appears that shortly after his discharge on August 29, 1955, by the employer named in his second alleged cause of action, Fullerton filed with the National Labor Relations Board a ''charge'' against the Union charging it with engaging in unfair labor practices within the meaning of section 8(b), subsections (1) (A) and (2) of the National Labor Relations Act[1] (hereinafter called the Taft-Hartley Act) in that the Union had, by requests, demands and threats, caused Visual Drama, Inc., to discriminate against him in regard to his tenure of employment and the terms and conditions of his employment, in violation of section 8(a) (3) of the act, and had restrained and coerced him in the exercise of the rights guaranteed him by section 7 of the act.[2] It further appears that on January 25, 1956,

[1]Section 158 U.S.C.A., title 29.
[2]Section 157 U.S.C.A., title 29.

the National Labor Relations Board's regional director permitted Fullerton to withdraw his charge against the Union without prejudice.

It does not appear that the National Labor Relations Board issued a complaint against the Union or that the board either expressly rejected or accepted jurisdiction of the charge made by Fullerton, nor does it appear whether the board had, at the time it permitted Fullerton to withdraw his charges, commenced an investigation of those charges.

It is petitioner's contention that the respondent court does not have jurisdiction of any of the causes of action set forth in Fullerton's complaint, but that exclusive jurisdiction, to grant either the equitable relief sought by the first cause of action or the damages sought by the remaining causes of action, is vested in the National Labor Relations Board.

We have come to the conclusion that the respondent court does not have jurisdiction to proceed with the trial of the action insofar as the first cause of action set forth in Fullerton's complaint is concerned, but that it does have jurisdiction to proceed insofar as, by that complaint, Fullerton seeks damages against the Union for wrongfully preventing him from earning his livelihood through employment as a sound technician.

By section 7 of the Taft-Hartley Act employees are given the right of self-organization, to form or join labor organizations, and also the right to refrain from so doing except as that right may be affected by a collective bargaining agreement as a condition of employment under the provisions of section 8 of the act.

By subsection (a) (3) of section 8 of the act, it is made an unfair labor practice for an employer to discriminate in regard to hire or tenure of employment or any terms or conditions of employment, or to encourage or discourage membership in any labor organization except that an employer may enter into an agreement with a labor organization which is the collective bargaining agent of its employees by which membership in the Union, on and after the 30th day of employment, shall be a condition of employment.

By subsection (b) (1) of section 8 of the act it is made an unfair labor practice for a labor organization to restrain or coerce an employee in the exercise of the rights guaranteed him by section 7 of the act, and by subsection (b) (2) it is made an unfair labor practice for a union to cause or attempt to cause an employer to discriminate against an employee

to whom membership in the union has been denied on grounds other than failure to tender periodic dues and the initiation fee uniformly required as a condition of acquiring or retaining membership.

■ There can be no doubt that the facts alleged in the first cause of action of Fullerton's complaint, if proven, would establish an unfair labor practice on the part of the Union in that it has, while denying Fullerton membership in the Union, prevented him from securing employment because of his nonmembership in the Union; and it is also clear that the relief which Fullerton seeks by his first cause of action is the same relief which the National Labor Relations Board is empowered to give by section 10 of the act.[3]

The complaint seeks to prevent the Union from engaging in an unfair labor practice, but the prevention of such acts is the exact matter which Congress has placed within the jurisdiction of the National Labor Relations Board. The first sentence of section 10 of the act reads: "The Board is empowered, as hereinafter provided, *to prevent* any person *from engaging in any unfair labor practice* (listed in section 158 [sec. 8 of the Act] of this title) affecting commerce." [Emphasis added.] Under section 10 of the act, the board, if it accepts jurisdiction of a charge filed, *may* issue a complaint and, after hearing, order the person charged with an unfair labor practice to cease and desist, and enforce its order by petition to a proper court of the United States.

The board's jurisdiction to prevent unfair labor practices of the kind involved here is exclusive (*Garner* v. *Teamsters, C. & H. Union,* 346 U.S. 485 [98 L.Ed. 228, 74 S.Ct. 161]), and a state court cannot act to enjoin such unfair labor practices unless the board declines jurisdiction (*Garmon* v. *San Diego Bldg. Trades Council,* 45 Cal.2d 657 [291 P.2d 1]). The complaint in question here does not allege that the National Labor Relations Board has expressly refused to assume jurisdiction of the unfair labor practice charged in the complaint, or any facts from which the court below could find that it would refuse jurisdiction if a charge against the Union were filed with it by Fullerton.

■ Respondent Fullerton (as real party in interest) contends, however, that the superior court may now act because the unfair labor practices charged by count I of the complaint occurred more than six months ago and that therefore the

---

[3] Section 160 U.S.C.A., title 29.

board would be precluded from issuing a complaint upon any charge filed by him with the board. There is no merit in this contention insofar as the injunctive relief sought by the first count of the complaint is concerned. Fullerton was authorized by the act to file with the board a charge against the Union within six months after the occurrence of each of the unfair labor practices against him and he cannot, by failing to pursue this administrative remedy, vest jurisdiction in the courts of this state to grant him preventive relief (*Gerry of Calif.* v. *Superior Court,* 32 Cal.2d 119 [194 P.2d 689]).

Nor, would it seem, is he now precluded from filing a charge against the Union for its alleged unfair labor practice; for the practice is alleged to be a continuing one, and he need only, in order to lay the basis for a charge, again seek employment and membership in the Union; and if both be refused, he may then prosecute his administrative remedy.

It follows from what we have said that the respondent court is without jurisdiction to take any further proceedings in the action before it insofar as the preventive relief sought under the first cause of action set forth in the first amended complaint is concerned.

We think, however, that the remaining causes of action present a different question. By them, Fullerton seeks damages for the wrongful act of the defendant Union in depriving him of his means of livelihood. He does not seek preventive relief but only redress for a wrong done him in depriving him of his common-law and constitutional right to pursue his chosen occupation and thus gain his livelihood.

Fullerton's right to work is a right guaranteed him by the federal Constitution as well as by the Constitution of this state (14th Amend., U.S. Const.; Cal. Const., art I, §§ 1 and 13; *Bautista* v. *Jones,* 25 Cal. 2d 746, 749 [155 P.2d 343]; *James* v. *Marinship Corp.,* 25 Cal.2d 721, 731, 733 [155 P.2d 329, 160 A.L.R. 900]).

This right to work is not an absolute one but may be limited by an agreement between a union, acting as bargaining agent for all employees, and the employer, that membership in the union be a condition to employment. The union, however, cannot, by such an agreement, effect a closed shop and at the same time maintain a closed union (*Bautista* v. *Jones, supra; James* v. *Marinship Corp., supra*). If it attempts so to do and thus deprives a person of employment, it commits an actionable wrong against him (Rest., Torts, § 810).

■ It is true that under the Taft-Hartley Act it is now an unfair labor practice for a union to wrong a person who seeks employment by causing an employer to discriminate against him because of nonmembership in the union, where such membership has been denied him. That person's cause of action, however, is not founded upon the fact that the act makes the wrong done him an unfair labor practice, but it arises from the tortious act of the union in depriving him of his fundamental right to work (*Bautista* v. *Jones, supra*; *James* v. *Marinship Corp., supra*).

■ The powers given the National Labor Relations Board by section 10 of the Taft-Hartley Act are preventive rather than remedial in character. Congress, by the act, made certain wrongs unfair labor practices and, through the administrative procedures before the board, provided a means of preventing them. It did not attempt to provide any remedy by which a person in Fullerton's situation may recover damages for a wrong done him, and who does not seek the preventive relief provided for by the act. (*United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025, 1031].)

■ The act does grant to the board the power to order the reinstatement of a discharged employee and order the payment of back wages for the period during which he has been deprived of employment by an unfair labor practice, committed either by the union or the employer. But this power of the board is supplementary to and in aid of its preventive power exercised through the means of a cease-and-desist order (*United Const. Workers* v. *Laburnum Const. Corp., supra,* p. 1032 L.Ed.). It cannot exercise this power unless it is called upon to exercise its preventive powers.

■ There is nothing in the act which compels a person who has a common-law right to action against a union for damages, to invoke the preventive powers of the board. One in the situation that Fullerton is in here is not required to challenge the validity of his discharge from employment, and seek an order requiring the union and the employer to cease and desist from unfair labor practices together with an order reinstating him with back pay. Such a person may forego his rights under the act and prosecute his action for damages, which is founded not upon the unfair labor practice as such but upon the violation of his fundamental and constitutional right to work. (*Moore* v. *Illinois Central R. Co.,* 312 U.S. 630 [61 S.Ct. 754, 85 L.Ed. 1089]; *Slocum* v.

*Delaware, L. & W. R. Co.*, 339 U.S. 239 [70 S.Ct. 577, 94 L.Ed. 795, 800] ; *Kuzma* v. *Millinery Workers Union*, 27 N.J. Super. 579 [99 A.2d 833] ; *Charles H. Benton, Inc.* v. *Painters Local Union No. 333*, 45 Cal.2d 677, 682 [291 P.2d 13].)

In *Slocum* v. *Delaware, L. & W. R. Co., supra,* the Supreme Court of the United States, in holding that the National Railroad Adjustment Board had exclusive jurisdiction to interpret bargaining agreements between railroads and the unions representing their employees, distinguished the case of *Moore* v. *Illinois Central R. Co., supra,* in which that court had upheld the right of a railway employee to sue at law for damages sustained by reason of his being discharged in the violation of the terms of such an agreement, and in so doing, said :

''Our holding here is not inconsistent with our holding in *Moore* v. *Illinois Cent. R. Co.* 312 US 630 [85 L ed 1089, 61 S Ct 754]. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board.''

Petitioner emphasizes the fact that by the last five causes of action in his complaint Fullerton seeks to recover back wages, and asserts that by so doing he has attempted to have the state court provide him a remedy of which the National Labor Relations Board is given exclusive jurisdiction. Loss of wages is the measure of Fullerton's damage for the wrong done him, and the fact that he pleads the evidentiary facts by which his loss may be determined, rather than the ultimate fact of the amount of his loss, does not change the nature of the right which, by these causes of action, he asserts.

It is apparent that Fullerton has abandoned any right to invoke the preventive power of the board as to the instances of unfair labor practice described in the last five causes of

action of his complaint by failing to file and maintain charges with the board within six months after the occurrence of the unfair labor practice. If Fullerton should hereafter file charges with the board based upon a repetition of the wrongful acts which are alleged in the last five causes of action of his complaint, the board would be without power to grant him compensation for the wrongs alleged in the complaint, for it cannot issue a complaint as to any wrong occurring more than six months before the service and filing of a charge. Therefore the prosecution of this action, insofar as the last five counts of the complaint are concerned, will in nowise hinder or impede the board in the exercise of its jurisdiction over any charge that may be hereafter filed with it.

Let a peremptory writ of prohibition issue, enjoining the Superior Court of the State of California, in and for the County of Los Angeles, from taking any proceedings, pursuant to the first cause of action set forth in the first amended complaint in Action Number 648972 in said court, granting to the plaintiff any relief by way of an injunction, mandatory or prohibitory, pertaining to the acts of the defendants as alleged in said first cause of action.

The petition for a writ of prohibition as to the second, third, fourth, fifth, and sixth causes of action is denied.

White, P. J., and Fourt, J., concurred.

Petitioner's application for a rehearing was denied May 10, 1956, and its application for a hearing by the Supreme Court was denied June 20, 1956.