[S. F. No. 19325. In Bank. Jan. 16, 1958.]

JOHN F. THORMAN, Respondent, v. INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA et al., Appellants.

Tobriner, Lazarus, Brundage & Neyhart, Mathew O. Tobriner and Irving S. Rosenblatt, Jr., for Appellants.

Pembroke Gochnauer for Respondent.

SHENK, J.—This is an appeal by the defendants from a judgment granting to the plaintiff a writ of mandate to compel his admission to membership in the defendant Local 162 of the Moving Picture and Projecting Machine Operators of the City and County of San Francisco. Damages in the sum of $1,289.70 and $1,500 attorney fees were also awarded to the plaintiff.

Local 162 is a member of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada. Through contracts with 66 of the 70 motion picture theaters in San Francisco it controlled working conditions for projectionists and machine operators. It limited the number of journeymen members to 112 all of whom were regularly employed, and in addition dispatched machine operators and projectionists for another 175 jobs from the membership of other locals. The plaintiff is an experienced and qualified machine operator, having been engaged in that work since 1942 except for Army service. He is a member of Local B18, a subsidiary of Local 162. Over and above his dues to Local B18, he is required to pay a "working fee" to Local 162 in the same amount as its journeymen members. However, he is not a member of that union, he lacks the security of employment and seniority possessed by the members thereof, and has no voice as to its organization, its contracts or working conditions imposed by it.

Prior to the commencement of this action the plaintiff was regularly dispatched to work by the officials of Local 162.

In January 1953 he filed with that local his written application for journeyman membership accompanied by one-half of the initiation fee, as required by its constitution. He was notified in writing to take the entrance examination conducted by the local. He passed it, filed a doctor's certificate showing a good physical condition, and appeared at a regular meeting relating to applications for memberships. His application failed to receive a favorable two-thirds vote of the members voting, as required by the local's constitution, and was rejected. The trial court found that the "plaintiff meets all lawful and reasonable requirements for membership in Local 162; and that plaintiff has performed each and every act heretofore required of him under the constitution and by-laws of Local 162 as a condition precedent to admission to journeymen membership therein, save and except said membership vote." After the rejection of his application Local 162 dispatched a newly-admitted journeyman to perform the work for which the plaintiff had been regularly employed and the plaintiff has since then been employed intermittently elsewhere.

The plaintiff contends, and rightly so, that a labor organization may not properly maintain a closed union and a closed shop at the same time. (*James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900] ; *Dotson* v. *International Alliance etc. Employes,* 34 Cal.2d 362 [210 P.2d 5].)

Furthermore, a reference to the opinion in the case of *Garmon* v. *San Diego Building Trades Council, ante,* p. 595 [320 P.2d 473], this day decided, discloses that under present law a state court has jurisdiction to grant both legal and equitable relief in disputes involving labor practices in violation of valid state laws where interstate commerce is not involved but may not grant equitable relief by way of injunction in controversies involving commerce between the states. The plaintiff contends that interstate commerce is not here involved and that the state court therefore has jurisdiction to grant both the equitable and legal relief sought by him.

Whether the cause of action alleged by the plaintiff is one entirely local in character or one also affecting interstate commerce must be determined by an examination of the record in this case. It appears from the amended complaint that the defendant Local 162 asserts "jurisdiction over moving picture operators and projectionists employed in the City and County of San Francisco, State of California"; that Local 162 exercises "a monoply over all employment in the occupation of moving picture machine operators and pro-

jectionists employed in the said City and County," and "does possess, maintain and enforce closed shop agreements with all the employers who own or operate motion picture theaters covering the employment of moving machine operators and projectionists in said City and County"; that the plaintiff "entered the jurisdiction of Local 162 in February, 1942, when he commenced work as a moving picture machine operator and projectionist in San Francisco"; that "from June, 1951 until June 7, 1953 plaintiff was regularly employed as a moving picture machine operator and projectionist in the Center Theater in said City and County"; that on or about May 22, 1953 defendants notified the plaintiff in writing that one Joseph Ford, a member of Local 162, had requested plaintiff's job at the Center Theater and that said Ford would take over plaintiff's job at said theater on June 7, 1953," and that "defendants thereafter dispatched said Ford to said Center Theater on June 7, 1953 in the place and stead of plaintiff and the plaintiff was thereby deprived of his employment and the right to work in his trade in said City and County."

There is nothing in the foregoing to suggest that the employment from which the plaintiff was deprived was one which affected interstate commerce. Likewise, there is nothing in the answer which in any way raised such an issue either by denial or in the allegations of affirmative defenses. As the issue was not raised by the pleadings or the proof the trial court made no findings of fact as to whether the plaintiff's employment was or was not one which affected interstate commerce.

The defendants seek now, for the first time on appeal, to show that the plaintiff's employment had a substantial effect on interstate commerce and that thereby the state court was deprived of jurisdiction under the rule announced by the Supreme Court of the United States in *Guss* v. *Utah Labor Relations Board*, 353 U.S. 1 [77 S.Ct. 598, 1 L.Ed.2d 601], *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.*, 353 U.S. 20 [77 S.Ct. 604, 1 L.Ed.2d 613], and *San Diego Building Trades Council* v. *Garmon*, 353 U.S. 26 [77 S.Ct. 607, 1 L.Ed.2d 618]. This request would require a factual determination which on the present record cannot be made. Having failed to raise the issue in the pleadings and to submit evidence in the trial court in proof thereof, the defendants are now foreclosed from asserting it. (*Seven Up etc. Co.* v. *Grocery etc. Union*, 40 Cal.2d 368, 372 [254 P.2d 544, 33 A.L.R.2d 327].)

634

■ The fact that the defendant Local 162 is affiliated with the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, also a defendant herein, and presumably might make the effect of the limitations imposed on the plaintiff's employment felt on a nationwide scale is of no consequence. The employment involved in the present case concerned only the Center Theater in the City and County of San Francisco and there is no hint that the business of that employer affected interstate commerce. (See 29 U.S.C.A. § 151, Findings and declaration of policy, and § 152, Definitions.) Accordingly the dispute is not one within the cognizance of the National Labor Relations Board and the state courts are not deprived of their jurisdiction to resolve the controversy and to award equitable relief and damages for tortious conduct.

■ It is clear that the plaintiff's cause of action falls within the principles announced in *James* v. *Marinship Corp.*, *supra*, 25 Cal.2d 721, and that mandamus is a proper remedy. (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134 [231 P.2d 6, 21 A.L.R.2d 1387]; *Dotson* v. *International Alliance etc. Employes, supra*, 34 Cal.2d 362.) ■ The defendants claim, however, that in determining the plaintiff's loss of earnings the trial court failed to take into consideration earnings by the plaintiff in other than theater employment, and that such loss of earnings was based in part on overtime work available at the Center Theater whereas the plaintiff's health would not have permitted him to perform such work. It appeared that the plaintiff had earnings from other than theater work both before and after his discharge from the Center Theater. The court awarded damages based upon the difference in the plaintiff's actual earnings from theater employment and the actual earnings of the projectionist who replaced him at the Center Theater during the period involved. This was a reasonable and proper basis to award damages. (*Dotson* v. *International Alliance etc. Employes, supra*, 34 Cal.2d 362, 374; *Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297, 298 [149 P.2d 177]; *Harris* v. *National Union etc. Cooks & Stewards*, 98 Cal.App.2d 733, 738 [221 P.2d 136].) The findings of fact and conclusions of law are essentially in accordance with the allegations of the amended complaint as to the right to the writ of mandate and the award of damages and there is substantial evidence in support thereof.

■ It is claimed that the award for attorney fees is not recoverable in this case. As there was no contractual, statutory or other proper basis for the award it was therefore im-

properly made. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 272 [158 P.2d 3].)

■ The defendants also claim that the plaintiff failed to exhaust his administrative remedies within the defendant unions. The trial court found on substantial evidence that had the plaintiff attempted to appeal from his rejection of membership it would have been a "futile, useless and idle act. . . ." Accordingly he was not required to pursue such a remedy. (Civ. Code, § 3532; *Elevator Operators etc. Union* v. *Newman,* 30 Cal.2d 799, 809 [186 P.2d 1].)

The judgment is modified by striking therefrom the award for attorney fees in the amount of $1,500 and, as so modified, is affirmed, with costs to neither party.

Schauer, J., Spence, J., and McComb, J., concurred.

TRAYNOR, J.—I dissent.

The crucial question in this case is whether the union is committing an unfair labor practice that affects interstate commerce within the meaning of the Labor Management Relations Act. If it is, exclusive jurisdiction is vested in the National Labor Relations Board. (*Garner* v. *Teamsters etc. Union,* 346 U.S. 485, 501 [74 S.Ct. 161, 98 L.Ed. 228].) Jurisdiction of the subject matter may not be conferred upon the court by the parties (*Sampsell* v. *Superior Court,* 32 Cal.2d 763, 773, 776 [197 P.2d 739]), and lack of such jurisdiction may be raised for the first time on appeal. (*Costa* v. *Banta,* 98 Cal.App.2d 181, 182 [219 P.2d 478].) In the present case the jurisdictional question was not only raised on appeal but before, during, and after the trial; and proof was taken on that issue. *Seven Up Bottling Co.* v. *Grocery Drivers Union,* 40 Cal.2d 368, 372 [254 P.2d 544, 33 A.L.R.2d 327], is not in point, for there the question of interstate commerce was not raised. (See *Seven Up Bottling Co.* v. *Grocery Drivers Union, ante,* p. 625 [320 P.2d 892].) In the present case the defendants raised the issue in a demurrer, which was overruled, wherein it was pleaded that the complaint was uncertain in that "it cannot be ascertained therefrom: . . . (d) Whether or not the closed-shop agreements referred to in paragraph V, page 3, line 10, involve theaters engaged in interstate or intrastate business.

"(e) Whether or not the job at Center Theater, referred to in paragraph XIII, page 10, constitutes employment at a theater engaged in interstate or intrastate commerce."

Furthermore, the trial court permitted defendants to in-

troduce evidence over objections by plaintiff that theaters with which Local 162 has closed-shop contracts were members of interstate chains. The evidence indicated that different theaters were members of chains such as Fox West Coast, Inter-Mountain Fox, Stanley Werner Theatres (a chain of about 200), National Theatres (a chain of about 425), Loew's, Incorporated (a chain of about 300), Paramount-Dumont (a chain of about 250), and RKO (a chain of about 200). It was estimated that 30 per cent of the theaters in San Francisco were connected with interstate chains. This evidence was undisputed.

The defendants also submitted proposed amendments to the findings of fact and conclusions of law that "said motion pictures theaters are engaged in and affect interstate commerce; that said employers are engaged in commerce within the meaning of the Labor Management Relations Act . . ." and that "sole and exclusive jurisdiction for any claimed unlawful activities of Local 162 falls under the Labor Management Relations Act. . . ."

The fact that there is no evidence or finding that the Center Theater was engaged in interstate commerce does not make the action local in nature, for plaintiff could have been displaced from any theater by a member of Local 162 under the contracts, and the refusal of Local 162 to dispatch plaintiff to suitable employment is a refusal as to all the theaters. The discrimination caused by Local 162 applies to all theaters, for no theater will hire plaintiff unless he is dispatched by Local 162. Moreover, plaintiff's prayer substantiates the involvement of all theaters, for he prays for a mandatory injunction "compelling defendants forthwith to dispatch plaintiff to suitable employment as a moving picture machine operator or projectionist within the jurisdiction of Local 162," which involves all the theaters in San Francisco, and in the alternative for an injunction to prevent defendants from interfering with plaintiff's right to employment "at the Center Theater in the City and County of San Francisco or at any other motion picture theater in said City and County." The involvement of all theaters is further emphasized by plaintiff in his Supplemental Memorandum wherein he states: "Here the entire controversy is between Thorman and the union" and that "he [plaintiff] is not suing to get back a job at Center Theater. . . ." Thus the union's unfair labor practice, if any, encompasses all the theaters in San Francisco, and plaintiff so alleges.

In *Guss* v. *Utah Labor Relations Board,* 353 U.S. 1, 3, 10 [77 S.Ct. 598, 1 L.Ed.2d 601], it is stated that by the use of the language "affecting commerce" in the Labor Management Relations Act, Congress meant to "reach the full extent of its power under the Commerce Clause" even though a "no-man's land" is created when the National Labor Relations Board refuses to exercise jurisdiction and state courts are precluded from acting. If the effect on commerce is more than *de minimis,* it is covered by the Labor Management Relations Act. (*National Labor Relations Board* v. *Denver Building & Construction Trades Council,* 341 U.S. 675, 684-685 [71 S.Ct. 943, 95 L.Ed.2d 1284].) When an unfair labor practice affects a single theater that is one of a multistate chain, the effect on commerce is sufficient to fall within the Labor Management Relations Act. (*In the Matter of American Federation of Musicians, Local No. 24,* 92 N.L.R.B. 1528, aff'd sub nom. *Gamble Enterprises, Inc.* v. *National Labor Relations Board,* 203 F.2d 565; *In the Matter of Balaban & Katz,* 87 N.L.R.B. 1071, 1072.) The sole method by which a state may acquire jurisdiction, when interstate commerce is affected, is by a cession of jurisdiction under section 10(a) of the Labor Management Relations Act (Guss case, *supra,* 353 U.S. at 9) and there is no such cession here.

Plaintiff's allegations charge an unfair labor practice within the meaning of the Labor Management Relations Act, section 8(b)(2), 29 U.S.C.A. section 158(b)(2), which reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents— . . .

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

Subsection (a)(3) refers to discrimination by an employer "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ." It is obvious that it is because of such discrimination resulting from the contracts between Local 162 and the theaters that plaintiff seeks relief in the courts to compel the union to admit him to membership. Numerous similar cases demonstrate that the National Labor

Relations Board can not only terminate the unfair labor practice but order the union to make the plaintiff whole for loss of wages. (*Radio Officers' Union* v. *National Labor Relations Board,* 347 U.S. 17, 54-55 [74 S.Ct. 323, 98 L.Ed. 455]; *Born* v. *Laube,* 213 F.2d 407, 409, rehearing denied 214 F.2d 349, certiorari denied 348 U.S. 855 [75 S.Ct. 80, 99 L.Ed. 674]; *National Labor Relations Board* v. *Philadelphia Iron Works,* 211 F.2d 937, 943; *National Labor Relations Board* v. *George D. Auchter Co.,* 209 F.2d 273, 276-277; *National Labor Relations Board* v. *Bell Aircraft Corp.,* 206 F.2d 235, 236; *National Labor Relations Board* v. *International Union,* 194 F.2d 698, 700; *National Labor Relations Board* v. *Kingston Cake Co.,* 191 F.2d 563, 566; *Union Starch & Refining Co.* v. *National Labor Relations Board,* 186 F.2d 1008, 1014.) Other state courts in similar cases have refused both injunctive and compensatory relief on the ground that exclusive jurisdiction therefor is vested in the National Labor Relations Board. (*Collins* v. *Merritt-Chapman & Scott,* 91 Ga.App. 856 [87 S.E.2d 337, 340]; *Sterling* v. *Local 438,* 207 Md. 132 [113 A.2d 389, 396]; *Real* v. *Curran,* 285 App.Div. 552 [138 N.Y.S. 2d 809, 812]; *Ryan* v. *Simons,* 277 App.Div. 1000 [100 N.Y.S.2d 18, 19]; *Mahoney* v. *Sailors' Union of the Pacific,* 45 Wn.2d 453 [275 P.2d 440, 444-445].) Although *International Sound Technicians* v. *Superior Court,* 141 Cal.App. 2d 23, 30 [296 P.2d 395], held that the plaintiff need not seek relief from the National Labor Relations Board and upheld the state court's jurisdiction to award damages for loss of wages, that case is no longer law. State courts may not afford a parallel remedy to one the National Labor Relations Board is empowered to give; the board's jurisdiction is exclusive. (*Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc.,* 353 U.S. 20, 23; *Born* v. *Laube, supra,* 213 F.2d at 409; see dissenting opinion in *Garmon* v. *San Diego Building Trades Council, ante,* p. 595 [320 P.2d 473].)

Plaintiff contends nevertheless that the National Labor Relations Board cannot compel the union to admit him to membership and that the state court has jurisdiction to grant that relief. (*Real* v. *Curran, supra,* 138 N.Y.S.2d at 813.) It is clear, however, that the board could order the union to terminate the unfair labor practice. If the union did so by admitting plaintiff to membership, he would receive the very relief requested. If the union did so by terminating the discrimination, it would thereby terminate the closed-shop, and plaintiff would not be entitled to relief in the courts of this state under *James* v. *Marinship Corp.,* 25 Cal.2d 721, 730

[155 P.2d 329, 160 A.L.R. 900]. In either event plaintiff would obtain from the National Labor Relations Board all the relief to which he is entitled.

I would reverse the judgment and remand the case with directions to the trial court to dismiss the action for lack of jurisdiction.

Gibson, C. J., and Carter, J., concurred.

Appellants' petition for a rehearing was denied February 13, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.