[Crim. No. 8802. Third Dist. Nov. 18, 1976.]

In re JACK LEE PARK on Habeas Corpus.

## COUNSEL

Jack Lee Park, in pro. per., and Tom Volk, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, and J. Rodney Davis, Deputy Attorney General, for Respondent.

## OPINION

**FRIEDMAN, J.**—Petitioner filed a petition for habeas corpus in the state Supreme Court. That court issued an order returnable before this court,

directing the People to show cause "why petitioner's now expired term for violation of Penal Code section 459 . . . should not be redetermined pursuant to *In re Rodriguez,* 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384], and the commencement date of the consecutive term for violation of Penal Code section 245 . . . established in conformity therewith."

■ In October 1960, petitioner was convicted of second degree burglary, an offense carrying an indeterminate sentence of 1 to 15 years. (Pen. Code, § 461.) He was sentenced to state prison, where he arrived on October 26, 1960. Over the ensuing years petitioner was in and out of prison as a result of grants and infractions of parole. As was then the practice, his term was refixed at maximum concurrently with each parole suspension. In August 1970 petitioner was temporarily in the San Diego County jail, where he attacked and severely injured a jail inmate. As a result he was convicted in May 1971 of assault with a deadly weapon and sentenced to state prison. As it then read, Penal Code section 245, subdivision (a), called for an indeterminate sentence not exceeding 10 years for the assault.[1] The sentencing court ordered that the new sentence be served consecutively, that is, upon termination of any existing sentence. (Pen. Code, § 669.) At that time petitioner's burglary sentence had been refixed at maximum (15 years).

Next in the sequence of events was the Supreme Court's decision in *In re Rodriguez, supra.* That decision was filed June 30, 1975. The *Rodriguez* decision requires the Adult Authority promptly to fix a prisoner's term within the statutory range; the term so fixed must be constitutionally proportionate to the culpability of the individual offender; the term (called primary term) must reflect only those circumstances existing at the time of the offense and may not reflect the in-prison attitude or conduct of the inmate; once the primary term is fixed, the Adult Authority may reduce it upon a showing of good conduct and of rehabilitative effort; if the inmate or parolee engages in negative conduct, the Adult Authority may refix the reduced term up to the primary term but may not extend the primary term up to the statutory maximum. (14 Cal.3d at pp. 652-654.)

Following *Rodriguez,* the Adult Authority embarked upon the process of establishing primary terms for thousands of prison inmates and

---

[1]After petitioner's offense, Penal Code section 245, subdivision (a), was amended to impose a sentence of six months to life for assault with a deadly weapon. (Stats. 1970, ch. 796, effective Nov. 23, 1970.)

parolees. (See *In re Williams,* 53 Cal.App.3d 10 [125 Cal.Rptr. 457].) Apparently petitioner was among those whom the Adult Authority could not reach in time to affect their then-current terms. His record shows no Adult Authority action between June 30, 1975, when *Rodriguez* was filed, and October 26, 1975. On the latter date petitioner completed service of the 15-year burglary term; that date was recorded as his discharge date. According to the prison records, he then commenced service of his assault sentence. On May 5, 1976, obedient to the *Rodriguez* decision, the Adult Authority fixed his primary term on the assault conviction at 10 years, with February 24, 1985, noted as the discharge date.

Petitioner's claim to relief is bottomed upon this thesis: had the Adult Authority acted promptly to fix his primary term for the second degree burglary conviction, guided only by the culpable character of the burglary and not by his subsequent conduct in prison and on parole, his burglary sentence would have expired much earlier than its actual October 26, 1975, expiration date; the Adult Authority's failure to fix his primary burglary term automatically deferred commencement of his current assault sentence; thus, by reason of the deferment of his assault sentence, he is under an existing disability and will suffer an extended term of imprisonment.

In response to the show cause order, the Attorney General contends that the Adult Authority is powerless to curtail petitioner's now-expired burglary sentence. He relies upon decisional declarations that a prison term may not be "revived" after its expiration. (*In re Haygood,* 14 Cal.3d 802, 812 [122 Cal.Rptr. 760, 537 P.2d 880]; *In re Shull,* 23 Cal.2d 745, 753 [146 P.2d 417]; *In re Beasley,* 256 Cal.App.2d 721, 723 [64 Cal.Rptr. 540].) His contention finds a measure of support in Penal Code section 2940, which calls for the discharge of a prisoner no later than the expiration of his maximum term.

The Attorney General's contention misses the point. Petitioner's claim does not require the nunc pro tunc curtailment of a now-expired term. Upon petitioner's conviction of assault in May 1971, he became the subject of consecutive sentences. At that point Penal Code section 3021 came into play.[2] That section empowers the Adult Authority to fix the

---

[2]Penal Code section 3021 declares: "When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the Adult Authority may determine and redetermine after the expiration of six months of his first sentence, what length of time he shall serve on all such cumulative or consecutive sentences."

time span a consecutively sentenced prisoner shall serve on all his sentences. It envisions unified, integrated treatment of several consecutive sentences. Relying upon section 3021, the California Supreme Court has declared: "[A] prisoner serving consecutive sentences must be regarded as undergoing a single, continuous term of confinement thereunder for the purpose of redetermination by the Adult Authority of the length of time of his imprisonment." (*In re Cowen,* 27 Cal.2d 637, 645 [166 P.2d 279].)

At another point the *Cowen* opinion states: "[C]onsecutive sentences, even if regarded as separate and distinct for some purposes, necessarily coalesce into one aggregate term of confinement during which the prisoner is continuingly restrained of his liberty." (*Id.* at p. 647.)

Factually, the *Cowen* case is very much in point, for it sustained the Adult Authority's action in refixing the time to be served on the first of two consecutive sentences after expiration of the term it had originally fixed. The court pointed out that the *Shull* decision's stricture against revival of an expired sentence applies only to prisoners confined under a single sentence or consecutive sentences. At this point the *Cowen* court declared: "But, respondent contends, for the purposes of computing and allowing credits, of forfeiting credits, and *of redetermining the length of time of imprisonment,* a prisoner confined under consecutive sentences must be regarded as undergoing a single, continuous term of confinement rather than a series of distinct, independent terms. With this contention we agree." (*Id.* at p. 643; italics supplied.)

Under somewhat different facts, the *Cowen* concept of a coalesced term formed by consecutive sentences was confirmed by *In re Byrnes,* 32 Cal.2d 843, 847-848 [198 P.2d 685]. There too, the court observed that the *Shull* stricture against revival was appropriate only when the total term of imprisonment had come to an end. The same concept was voiced in *In re Allen,* 239 Cal.App.2d 23 [48 Cal.Rptr. 345].

More recently, the Supreme Court commented upon the *Cowen, Byrnes* and *Allen* decisions but without in any way weakening their authority. (*In re Haygood, supra,* 14 Cal.3d at pp. 808, 812.)

Upon petitioner's conviction of assault in May 1971, he became the subject of a single, continuous term of confinement which has not yet ended. The total period of imprisonment emanating from his consecutive

sentences subsists. At no time has the Adult Authority exercised the power given it by section 3021 to formulate a unified view of these sentences and to fix his total term of imprisonment. Because the total term has not yet expired, the Adult Authority may and must apply the mandate of *Rodriguez* to that term.

The Adult Authority did not succeed in fulfilling the *Rodriguez* mandate when it fixed petitioner's primary term on the assault sentence at the 10-year maximum. Its action was measured by the culpability attached to the assault alone, without regard to the second degree burglary's place on the scale of culpability. At no time has the Adult Authority acted on the composite term created by the two consecutive sentences.

Theoretically, the assault sentence starts only upon expiration of the burglary term. The burglary—entering and pilfering an unoccupied mountain cabin—was not particularly heinous as crimes go. Petitioner asks that the Adult Authority chop the burglary term nunc pro tunc to a period proportional to its culpability—let us say two, three or four years, and then to start the assault term at that point. But the past cannot be completely rewritten in deference to later-articulated constitutional demands. Petitioner was not sentenced for the assault until June 4, 1971. He was returned to the state prison on June 7, 1971. To initiate the 10-year assault sentence "as of" an earlier date would give it birth before its conception.

Although the *Rodriguez* decision is fully operative upon unexpired terms, it does not compel retroactive curtailment of expired sentences. In this case, its demand will be satisfied by a reconsideration of the total term to be served by petitioner as a result of the burglary and assault sentences. That reconsideration does not entail retroactive imposition of a primary term on the now-expired burglary sentence. Rather, the Adult Authority should now review petitioner's total term as the composite of the primary terms for both offenses, subject to the limitation that the primary term for the assault component may commence no earlier than the date petitioner was received in prison following the assault conviction.

Let a writ of habeas corpus issue directing the Adult Authority to re-fix petitioner's total term of imprisonment; subject, however, to the limitation that his primary term of imprisonment for the assault may

commence no earlier than June 7, 1971 (adjusted to give any credit appropriate under Pen. Code, § 2900.5).

Puglia, P. J., and Paras, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 13, 1977.